IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO.:  16-24362-cv-LENARD/GOODMAN

LUIS REYES, on behalf of himself and
others similarly situated,

      Plaintiff.

v.

COLLINS & 74TH STREET, INC. and
MOHAMMED S. HOSSAIN,

      Defendants.
_____/

### DEFENDANTS' OMNIBUS MOTION *IN LIMINE* TO PRECLUDE IRRELEVANT  or PREJUDICIAL TESTIMONY AND EVIDENCE AND TO PERMIT CERTAIN AREAS OF INQUIRY

Defendants, COLLINS & 74TH STREET, INC ("Market"). and MOHAMMED S. HOSSAIN, through their undersigned counsel, and pursuant to the Court's pretrial order, hereby move *in limine* for entry of an order precluding introduction and identification of evidence or testimony (live or by deposition testimony) about, discussion of, reference or allusion to, or argument regarding, the following in the presence of the jury:

1)     Prior or pending cases and/or claims brought against Defendants (or either of them) under the FLSA, for purposes of establishing willfulness or any other evidentiary purpose;

2)     Settlement discussions in this litigation, including a letter that tendered recently discovered unpaid wages to Plaintiff, as constituting an admission of liability;

3)     An exhibit which Plaintiff purports to represent a piece of paper on which he clocked in and out on days he worked off the clock during an unknown pay period;

4)      "Me Too" testimony from current of former employees and from any prior or current plaintiffs who filed suit against either Defendant either through direct or impeachment testimony;

5)      Alleged hiring or employment of illegal workers, or other bad acts or allegedly illegal conduct on the part of Defendants (or either of them); and

6)      Defendants' wealth, net worth, assets, HOSSAIN's home address or location of his home, and other businesses owned by HOSSAIN.

Defendants also move in *limine* to allow them to introduce testimony (live or through deposition), identify evidence, discuss, allude to or argue the following before the jury:

7)      If the Court permits Plaintiff to elicit evidence or testimony about prior lawsuits and/or claims brought against either Defendant under the FLSA, the facts that: a)  prior lawsuits and/or claims were brought by J.H. Zidell, P.A; b)  J.H. Zidell, P.A.'s offices is located within walking distance of the Market, c) an employee of J.H. Zidell, P.A. is a regular customer of the Market; d) one of J.H. Zidell, P.A.'s business cards was given to an employee of the Market; e)  after Plaintiff resigned from the Market, he began to work with a former Market employee who previously hired J.H. Zidell, P.A. and sued Defendants; f) Plaintiff learned of J.H. Zidell, P.A through former co-workers;  g) prior lawsuits were settled for the sake of peace with no admission of liability; h) two plaintiffs represented by J.H. Zidell, P.A. were terminated for theft and i) two more  plaintiffs who sued HOSSAIN and on whose behalf J.H. Zidell, P.A. brought overtime claims, voluntarily dismissed their claims, were prosecuted by the Miami-Dade State Attorney's Office for

3rd Degree Grand Theft, and must repay HOSSAIN over $16,000.00 if they decide to re-file their overtime lawsuits; and

8)      Mr. Hossain's long-term attorney-client relationship with Langbein & Langbein, P.A., Leslie W. Langbein, Esq.'s background and experience in the area of wage and hour law; an invoice rendered by Langbein & Langbein, P.A. to HOSSAIN from 2004 which proves when he first sought and received legal advice regarding FLSA compliance; HOSSAIN's periodic request for advice from Mrs. Langbein regarding employment matters; and representation by  Langbein & Langbein, P.A. in litigation regarding the FLSA.

In support thereof, Defendants state:

## FACTUAL AND PROCEDURAL BACKGROUND

This lawsuit seeks alleged unpaid overtime pay under the FLSA. Plaintiff claims he is entitled to half-time pay because he worked an additional day each week "off the clock" and was paid at a straight time rate for those hours.  Defendants deny all of Plaintiff's allegations.

In 2004, a former business owned by HOSSAIN was sued for an FLSA violation. At that time, Langbein & Langbein, P.A. was recommended to him by his corporate attorney and he sought and received legal advice from Leslie W. Langbein, Esq. on FLSA compliance. HOSSAIN instituted a time clock system for keeping track of employee work hours, posted an FLSA poster, paid minimum wages; paid employees for any overtime recorded on their time cards at a time and half rate; never paid employees in cash, began to use Quickbooks so paychecks would show both the number of hours and pay rate an

employee was paid; and required all employees to clock in before they began to work and clock out only after they had finished their last work task.

HOSSAIN purchased the Market in 2010.   Before 2010, Market was sued by J.H. Zidell, P.A. twice. After 2010, Market was sue three times by J.H. Zidell, P.A. (including this case).   Each suit alleged "off the clock" work and payment at a straight time rate for overtime hours. Each prior case was settled for the sake of peace with no admission of liability.[1]   Each settlement agreement prohibited J.H. Zidell, P.A. from using the lawsuit or its settlement to establish willfulness or lack of good faith in any future lawsuit. See Exhibit "A", attached portions of settlement agreements.

Plaintiff worked for Defendants two times. His first stint was in early 2013.  He left the Market [2] and was re-hired again on 10/31/13.   When Plaintiff worked overtime, his timecards reflected the overtime. The corresponding paychecks for each pay period show that Plaintiff was paid for his overtime work at the proper time and a half rate.

Early in this litigation, Defendants discovered that there were computational errors in some of Plaintiff's paychecks which Plaintiff never brought to their attention. Defendants tendered the difference in wages to Plaintiff with a letter explaining how the amount was calculated. Exhibit "B".  The tender was rejected.   Plaintiff has attempted to use or portray the tender letter as an admission of liability in this lawsuit.   Indeed, the letter was the basis of Plaintiff's Motion for Partial Summary Judgment.  [DE 121].

---

[1]  In 2017 Mr. Zidell's law firm filed two separate FLSA lawsuits against HOSSAIN's other grocery store, NH, Inc. d/b/a/ Meridian Market, on South Beach.  NH, Inc. had different managers than the Market.  One of the cases was voluntarily dismissed in September, 2017 and the other is pending.   Mr. Zidell alleged the same allegations of "off the clock" work and payment in cash were occurring at NH, Inc.

[2]  This period is beyond the three year Statute of Limitations.

The day before Plaintiff's deposition, his counsel emailed a document suddenly produced to them by Plaintiff. Exhibit "C". It purported to be a separate sheet of paper on which he recorded his "off the clock" overtime hours in June of an unknown year. The paper had no other markings to indicate when or where the time stamps were created. Plaintiff never produced the original of the paper and testified at his deposition that he had destroyed the original. Plaintiff also never turned the piece of paper into Defendants. Plaintiff withheld and refused to produce an alleged second paper he possessed with time stamps.

At one of HOSSAIN's depositions, he refused to give his home address. HOSSAIN lives in the Indian Creek neighborhood in Miami Beach with higher priced homes. He owns other properties. He drives a luxury vehicle. He owns four businesses including NH, Inc. which also has been sued by J.H. Zidell, P.A.

<u>CERTIFICATION OF CONFERRAL</u>

Prior to filing this Motion, Defendants conferred with Plaintiff about the need for the relief sought in this Motion. Plaintiff opposes all relief sought.

<u>Memorandum of Law</u>

Motions *in Limine* serve important gatekeeping functions by allowing the trial judge to eliminate from consideration evidence that should not be presented to the jury because it would not be admissible for any purpose. *Jonasson v. Lutheran Child and Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997). Rulings on motions *in limine* give the parties notice of what evidence and testimony they will and will not be permitted to present at trial, making for a more orderly trial.

I.    <u>Evidence of Prior Lawsuits</u>

It is anticipated that Plaintiff's counsel will attempt to offer testimony or evidence of these prior or current lawsuits to show willfulness.  Rule 404(b) states in relevant part:

> "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. "

Some courts hold that evidence of other FLSA actions can be offered as evidence that the defendants were on notice that they should have more carefully investigated their duties under the FLSA. See, *Contreras v. Aventura Limosine and Trans. Serv.*, 2014 U.S. Dist. LEXIS 190747 (S.D. Fla. 2014);  *Black v. Reynolds*, 2016 U.S. Dist. LEXIS 12036 (S.D. Ala. 2016)   However, this is not carte blanche to bring in every FLSA suit filed against a defendant to establish willfulness.  See, Section IV, *infra*.

Here, the Market was sued twice for alleged FLSA violations before HOSSAIN purchased it.   Those lawsuits, therefore, are irrelevant since HOSSAIN did not set the wage and hour practices at issue. Nor can Plaintiff elicit testimony or evidence of cases which are not the same types of claims being asserted here.  See, *Mohnacky v. FTS Int'l Serv, LLC*, 2014 U.S. Dist. LEXIS 140075 (W.D. Tex. 2014) and cases cited therein;  See also *Crisostomo v. Kuhn Management, Inc.*, 2008 U.S. Dist. LEXIS 128158 (M.D. Fla. 2008) holding that prior lawsuits must relate to same type of conduct alleged in complaint. Nor should Plaintiff be able to offer evidence of lawsuits brought by its counsel against other businesses that HOSSAIN owns.   The plaintiffs in those cases had different managers, occupied different positions and their claims arose in different time periods. See arguments, infra at Section IV and VII.

Even if limited evidence of prior FLSA lawsuits of the same type against the Market

is relevant, they unquestionably result in grave prejudice to Defendants.  The immediate impression in the jury's mind is "where there is smoke, there is fire."   The prejudice will escalate exponentially if Plaintiff is able to bring in wholesale evidence or testimony about prior or current lawsuits, whether or not they are of the same kind, from a different time period, or a different location with different managers. Their relevance is far outweighed by the prejudice that Defendants will suffer and so warrant exclusion under Rule 403.

Moreover, fairness and relevance dictate that if Plaintiff introduces prior or current lawsuit as evidence of willfulness then he be held to have opened the door to Defendants' introduction of testimony or evidence of the fact that these cases were settled with no admission of liability and for the sake of peace and cost of defense despite Rule 408. See also arguments at Section VII *infra.*

Note:  Defendants may refer to the first lawsuit that was filed against a former business owned by HOSSAIN but only as the catalyst for why he sought out legal advice in 2004 on the FLSA and how he came to establish a relationship with Langbein & Langbein, P.A.

II.   <u>Settlement Discussions</u>

Defendants' 5/4/17 tender letter, Exhibit "B," offered to pay Plaintiff for weeks when his pay was miscalculated.   Plaintiff attempts to characterize this letter as an "admission" of liability in his Motion for Partial Summary Judgment.    To the extent that Plaintiff' attempts to use the letter for this purpose, it clearly falls within Rule 408's exclusion as "evidence of settlement offers only if such evidence is offered to prove *liability* for or invalidity, or amount, of the claim under negotiation." [E.S.]   Comparable, *Reyes v. Aqua Life Corp.*, 2012 U.S. Dist. LEXIS 195189 (S.D. Fla. 2012) [response to a demand letter];

*McMahon Securities Co. L.P. v. FB Foods, Inc.*, 2007 U.S. Dist. LEXIS 9123 (M.D. Fla. 2017) [email]; *Sears v. PHP of Ala, Inc.* 2006 U.S. Dist LEXIS 46523 (M.D. Ala. 2006) [Partial Offer of Judgment]. The 5/4/17 tender letter also should be excluded under Rule 403 due to the danger of unfair prejudice and confusion of issues by the jury. As noted in Defendants' response to Plaintiff's Motion for Partial Summary Judgment, Defendants never conceded to any of Plaintiff's claims. Defendants' 5/4/17 was limited to remediating minor miscalculations of wages of which Plaintiff never notified them at the time the errors occurred.

Even if excludable under Rule 408, Defendants anticipate that Plaintiff still will use the letter (and HOSSAIN's deposition testimony about the letter) at trial to establish willfulness. The jury might misapprehend the purpose for which the letter is being offered, confusing the errors the letter was intended to correct with the very different allegations Plaintiff brings in this lawsuit.

The danger of prejudice to Defendants is all the more heightened by it use in conjunction with the  anticipated cross examination of HOSSAIN about the two FLSA lawsuits brought by J.H. Zidell, P.A. in 2017. Defendants believe Plaintiff may attempt to use the letter as a jump off point to soliciting testimony about the efforts Defendants took after tendering the letter to ensure that *all* of his employees were properly paid. That use of the letter would be prohibited under Rule 407 as a subsequent remedial measure. *Torres v. Rock & River Food, Inc.*, 201 F. Supp 3d 1373 (S.D. Fla. 2016).

III.   Plaintiff's "Proof" that He Worked "Off the Clock."

Defendants anticipate that Plaintiff will offer (or refer to) the copy of a plain sheet of paper that he purports was used to document "off the clock" hours. [3]  See Exhibit "C". Plaintiff admits that he "could not find the original" [Exhibit "D", Reyes Depo, p. 46: 10-11] and that is because he later admitted he threw it away.  [Id, p. 113:1-4].  Logically, this leads to the conclusion that the document he produced to Defendants is a "copy of a copy."  Importantly, ***Plaintiff testified that he had a similar sheet of paper at home but he withheld, and refused to produce, it to Defendants in discovery***.  [Id, p. 83:12-24; 85:20-23].  Therefore, Defendants have never had an opportunity to examine or test the "original" of the documents (if originals ever existed).  In fact, Plaintiff testified he never turned the piece of paper into Defendants.  [Id., p. 47:7-9; 48:9]

Rule 1003 provides that "A duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate."  Plaintiff's own testimony provides the proof necessary to raise a genuine question as to the authenticity of the document.

While Plaintiff testified that he kept track of his "off the clock" hours each week by inserting a piece of paper into Defendants' time clock, he could not identify when the "copy of the copy" was created nor which work week it purportedly recorded.  [Id, p. 46:1-2; 47:25-48:1].   Nothing on the document indicates the punches were made using Defendants' time card machine.  Nothing on the sheet of paper indicates it is from Defendants' premises (such as an order form).  Though Plaintiff testified that all the hand-writing on the document is *his*, [Id, p. 46:16-18], there is no evidence of when he wrote

---

[3]  Plaintiff referred to this exhibit at his deposition as a sample of the papers he used to record his overtime hours on which were then handed in for payment in cash.

his name on it.   Was the hand-writing placed on the "original" ?  Or, did he sign a copy of the "original" before he copied it again ?  Did he sign the "copy of the copy?"

Lending even more suspicion to its authenticity is that Plaintiff testified that he kept the paper in his pants' pocket or stashed it away on top of merchandise in one of the dairy cases. [Id, p. 120:16-123:4].  Plaintiff admits that he had to stoop and bend to perform his job, yet, the "original" appears to be in pristine condition with no folds, creases or crinkles such as would be found if someone worked with a piece of paper in his pocket.  There are no condensation marks on the paper that would be produced if the paper was kept in humid environment like a dairy case.  There are no stains on the document such as would form after being handled by wet or dirty hands.   Plaintiff's inability to answer even basic questions about this document and the mystery of why he made a copy of an original and then destroyed the "original when combined with obvious incongruities between his testimony about where he kept the paper and its physical condition leads to the conclusion it is contrived evidence.

Moreover Rule 1004 provides "[a]n original is not required and other evidence of the content of a writing" is admissible if "all the originals are lost or destroyed, _and not by the proponent acting in bad faith_.   Here, Defendants vehemently dispute that there ever was an original because it was their business practice that all overtime be recorded on time cards.  Plaintiff admits that he destroyed the "original" yet, intentionally withheld and refuses to produce a like document, [Id, p. 109:23-110:17] despite the assurance of his counsel it would be turned over.  [Id, p. 83:16-17]. [4]

---

[4]  Plaintiff's counsel knew from its client's testimony the second sample was responsive to the following previous served Requests for Production which sought:

Destroying the only physical piece of evidence upon which Plaintiff bases his claim and then purposely withholding another is the epitome of bad faith.  It is wholly unfair for Plaintiff to depend on this suspiciously created "copy of a copy "document to support his claim yet withhold another to deny Defendants the right to examine the evidence that will be offered against them.

For these reasons, Plaintiff cannot satisfy Rule 1004 or Rule 901(a) which requires that the proponent of a document or item of evidence must produce evidence sufficient to support a finding that the item *is what the proponent claims it is*.   Further, Plaintiff's discovery violation in withholding and failing to produce the other alleged clock-in sheet he had in his possession dictates that he be prohibited from using or referring to the exhibit for any purpose in this litigation.

IV.   <u>"Me Too" Evidence</u>

Neither Plaintiff nor Defendants have yet named their trial witnesses but Defendants suspect that Plaintiff may attempt to call one of the prior (or current) plaintiffs who were or are represented by J.H. Zidell, P.A. to bolster his testimony of Defendants' wage and hour practices.    Defendants strenuously object to any attempt to do so.

Whether "me too" evidence is relevant is determined on a case-by-case basis.  *Sprint/United Management Co. v. Mendelsohn*, 552 U.S. 379, 128 S. Ct. 1140,

---

"1.    Documents in your possession, regardless by whom prepared, which reference, relate to or evidence the dates and times You arrived at work, You left work to make deliveries, took breaks, departed from work; took personal time off; and/or worked overtime during the Relevant Time Period.

2.    Notes, memoranda or other documents prepared by You which reference, relate to or concern Your employment with Defendants, except those prepared at Your attorney's direction."

1147, 170 L. Ed. 2d 1 (2008).  The determination depends on many factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case. The evidence must be logically and reasonably tied to the plaintiff's specific claims.  Other relevant factors include temporal proximity and whether the employees were similarly situated in relevant respects, including whether they worked in the same location and were supervised by common management.  *King v. CVS Caremark Corp.,* 2015 U.S. Dist. LEXIS 183350( N.D. Ala. 2015)[ADEA claim].  *Datjaratsri v. Domino's Pizza Inc.*, 2008 U.S. Dist. LEXIS 126764 (C.D. Calif. 2008)     In many respects the test is the same as for determining whether the witnesses would meet the test of being "similarly situated" for class certification purposes.  Two important concerns of allowing "me-too" evidence at trial is the grave potential for prejudice to defendants and the potential that each witness's testimony will result in a "mini-trial" of its own.    *Roman v. Burger King Corp.*, 2015 U.S. Dist. LEXIS 188963 (S.D. Fla. 2015).

　　　Defendants' concerns are as follows:  First, two of the prior plaintiffs brought cases against the Market *before it was owned by HOSSAIN.*    Two other cases were brought against NH, Inc., a different store at a different location with different managers.  See *Bettger v. Crossmark, Inc.*, 2014 U.S. Dist. LEXIS 82031 (M.D. Penn. 2014).  Second, each of the prior plaintiffs who sued the Market after  HOSSAIN purchased it contractually agreed that their lawsuits and the settlement of those lawsuits would not be admissible in any other proceeding to establish willfulness.    See Exhibit "B".

　　　There are important policy reasons for upholding and enforcing these contractual provisions and precluding the prior plaintiffs from testifying.  Foremost, such provisions encourage employers to seek an early settlement of FLSA claims which both fosters the

purposes of the FLSA and clears the cases from the court's calendar.   Additionally, employers would be less inclined to settle any FLSA case if they knew that a prior lawsuit and its settlement could be used against them to establish willfulness.  Allowing a plaintiff to breach his/her settlement agreement by using the lawsuit and settlement to establish willfulness diminishes the entire value of the settlement to employers and only foments additional litigation to establish the breach.

Finally, there is the reason expressed in Section VII below.  For all of these reasons, the Court should preclude Plaintiff from calling any prior plaintiff who worked at the Market before it was owned by HOSSAIN; any prior or current plaintiff who worked at NH, Inc. (who were supervised by an entirely different management team than Plaintiff's) or any prior plaintiff whose claims under the FLSA differed in any kind or respect from those of Plaintiff.

V.     Hiring of Illegal Aliens or Other Character Evidence

Defendants anticipate that Plaintiff or his witnesses will offer testimony that Defendants hired and employed illegal workers, treated employees poorly or committed other bad acts.   Such evidence or testimony is inadmissible as character evidence under Rule 403.   Moreover, there is no need to use it to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident" because proof of an FLSA violation does not require a showing of intent. *Allen v. Suntrust Banks, Inc*, 549 F. Supp 2d 1379 (N.D.Ga. 2008).

Indeed, intent only comes into play in two circumstances:   1) when a plaintiff attempts to establish willfulness, or 2) when a defendant attempts to establish good faith.  However, the inquiry in first instance is limited to whether the employer knew or should

have known that its conduct violated **_the FLSA_** or showed reckless disregard for whether it was and in the second instance to what efforts the employer made to comply with the **_FLSA._**   *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F. 3d  1150 (11th Cir. 2008).    Thus, testimony concerning whether Defendants hired or employed illegal workers, engaged in any other purported illegal acts or treated employees poorly is irrelevant and prejudicial under Rule 403 and inquiry into these areas should be precluded.

VI.    <u>Financial Worth</u>

MARKET admitted in its answer that it was an "enterprise engaged in commerce." There is no need for proof of this issue at trial.    Nevertheless, Defendants believe that Plaintiff intends to elicit testimony or attempt to introduce evidence (either direct or through inference) of HOSSAIN's financial status or his holdings. [5]   The general rule is that, during trial, 'no reference should be made to the wealth or poverty of a party, nor should the financial status of one party be contrasted with the other's.   *Brough v. Imperial Sterling Ltd.,* 297 F.3d 1172, 1178 (11th Cir. 2002) (citation omitted); *Reyes v. Aqua Life,Corp*, 2013 U.S. Dist LEXIS 195818 (S.D. Fla. 2013).  Given that enterprise coverage is established, the only other reason why Plaintiff would elicit testimony or attempt to introduce evidence of HOSSAIN's wealth would be to appeal to the jurors' sympathy or highlight the financial disparities between HOSSAIN and Plaintiff.    The erroneous

---

[5]   The parties have not yet submitted their Trial Exhibit lists.  HOSSAIN's deposition was taken three times in the past six (6) months.  It is unknown whether Plaintiff intends to introduce any of those transcripts as an exhibit at trial but the transcripts refer to other businesses owned by HOSSAIN.

admission of such evidence is not only highly prejudicial but constitutes reversible error. *Del Rosario v. Labor Ready*, 015 U.S. Dist. LEXIS, 180934 (S.D. Fla. 2015).

Defendants anticipate that Plaintiff may try to evade this prohibition by questioning HOSSAIN about the wage and hour practices he employs at his other businesses, or by questioning where HOSSAIN kept copies of Plaintiff's time records. [HOSSAIN testified at deposition that he stored all the time records from his businesses at his home office]. As argued in Sections I and IV above, Plaintiff should be precluded from referencing lawsuits brought against HOSSAIN at his other businesses or which involve different claims.  The fact of the address where HOSSAIN kept the time cards is immaterial and irrelevant; the admissibility of such testimony should be governed by Rule 403.  More important and relevant is the fact that HOSSAIN kept Plaintiff's time cards for the required period of three years.

VII.  Evidence of J.H. Zidell P.A.'s involvement in Prior Lawsuits Against Defendants and Similarity of Allegations to Counter Willfulness

Should the Court permit Plaintiff to introduce evidence of prior lawsuits against Defendants (via testimony or exhibits), or offer prior or current plaintiffs as witnesses to prove willfulness, then fairness dictates that Defendants be allowed to elicit testimony and evidence of the interlocking commonality between prior or current plaintiffs.

Evidence and testimony establishes that J.H. Zidell, P.A. represented the plaintiffs in Ramos v. Collins & 74th Street, Case 07-21478- Bandstra (filed on 6/7/07 before HOSSAIN owned the Market); Morales v. Collins & 74th Street, Case No. 08- 21884-cv-Bandstra (filed on 7/2/08 before HOSSAIN owned the Market);  Calderon v. Collins & 74th Street, Case No. 14-22585-cv-UU (filed on 7/11/14) and Reyes Montes v. Collins & 74th Street, 15-219660-cv-CA (filed 5/22/15).

Plaintiff Reyes Montes admitted at his deposition that he worked, and was good friends, with Lorenzo Calderon, one of the Plaintiffs in the Calderon case. The claims made in the amended complaints in Calderon and Reyes Montes lawsuits mirror each other, even down to the facts underlying their respective retaliation claims.   While Plaintiff denied that he worked with Reyes Montes at the Market, a comparison of their time cards indicate they worked overlapping shifts in the same position.   Plaintiff admitted that he met Reyes Montes when he went to work at New Generation Food Market after leaving the Market's employ.  [Reyes Depo, p. 60:14-20].  Plaintiff also worked for Defendants at the same time as the Calderon plaintiffs. [6]   All three prior plaintiffs make the exact allegations:  they worked off the clock and were paid for overtime hours at a straight time rate, the same claim Plaintiff makes in this litigation.

J.H. Zidell, P.A. also brought two lawsuits against HOSSAIN's other grocery store, NH, Inc., alleging of "off the clock" work and payment for overtime hours at a straight rate. One lawsuit had two plaintiffs, Ortiz v. NH, Inc., Case 17- 20169-cv-TORRES (filed on 1/13/17); each plaintiff voluntarily dismissed their claims in September, 2017.  The other lawsuit, Flores v. NH, Inc. 17- 22835-cv-DPG (filed on 7/28/17) is pending.  The Ortiz plaintiffs named Flores as a witness in her lawsuit and Flores has named the Ortiz plaintiffs as witnesses in her lawsuit.

While these facts might be indicative of a pattern or practice by HOSSAIN to violate the FLSA, it is just as easy for a jury to infer that the prior and subsequent lawsuits are simply a series of "copy-cat" lawsuits that were artfully pled by J.H. Zidell, P.A. to enhance

---

[6]   Plaintiff admitted knowing "Frank" which was Buenavista Calderon's nickname.

a potential for a finding of willfulness. [7]   The fact that Reyes' claims mirror prior and subsequent lawsuits also impacts his own credibility:  did he join the "bandwagon" because someone told him to go see J.H. Zidell, P.A. [Reyes Depo, p. 101:17-18] and what to claim ?  And, if he knew he was being cheated of pay, why did he destroy (or refuse to produce) the alleged paper clock-in and out sheets that allegedly support his claim ?   Questions of  Plaintiff about when and how he became aware of the prior lawsuits, why he did not join the prior lawsuits (especially if he knew he was not being paid appropriately), why he chose J.H. Zidell, P.A. to represent him and when he first went to see J.H. Zidell, P.A. are fair areas of inquiry on cross-examination.

Questions establishing lack of credibility always are a relevant area of inquiry or cross-examination, *See Buckley Towers Condo., Inc. v. QBE Ins. Corp.*, No. 07-22988-CIV, 2008 U.S. Dist. LEXIS 106718, 2008 WL 5505415 (S.D. Fla. 2008) cited in *Reyes v. Goya Foods, Inc.*, 2013 U.S. Dist. LEXIS 195857 (S.D. Fla. 2013), and Defendants should not be precluded from raising the above issues with trial witnesses in an effort to establish Plaintiff's lack of credibility.   Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking admissible evidence.  On cross-examination, the opposing counsel is given the opportunity to ferret out the weaknesses of a position to ensure the jury properly evaluates the weight that should be accorded such testimony or evidence.  Artic Cat, Inc. v. Bombardier  Rec. Prods., 2016 U.S. Dist. LEXIS 185998 (S.D. Fla. 2016).  For these reasons, Defendants should be permitted to elicit testimony or evidence regarding J.H.

---

[7]   Ortiz and her co-plaintiff dropped their identical claims after being criminally charged with 3rd Degree Grand Theft.   Flores was fired for petit theft.

Zidell P.A.'s involvement in prior (or current) lawsuits (if the court permits evidence of the latter) against Defendants and the similarity of the allegations to counter evidence of willfulness.

VII.    Mention of Langbein & Langbein, P.A. and Leslie W. Langbein, Esq.

Defendants' long-term relationship with Langbein & Langbein, P.A. and Mrs. Langbein are important because 1) the testimony and evidence of that attorney-client relationship tends to disprove Plaintiff's case and 2) it dispels the inference of willfulness that will arise if Plaintiff is permitted to introduce evidence or testimony of prior lawsuits. The facts that Defendants sought out and used Mrs. Langbein, an attorney with expertise in employment law; they routinely consulted her on employment law issues; and in particular, they specifically sought advice from her on matters relating to the FLSA are essential to countering Plaintiff's case of willfulness.

Evidence of Defendants' long-term relationship with Langbein & Langbein, P.A. and Mrs. Langbein is both legally and factually significant because the issues of willfulness and good faith are intertwined. *Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d. 1259 (11th Cir. 2008).  A lawyer's qualifications to render advice regarding the FLSA is relevant and material because it bears directly on the credibility of Defendants' testimony that they did not ignore their obligations under the FLSA and also whether their reliance on Mrs. Langbein's advice was reasonable. Compare,  Fuentes v. CAI, Int'l Inc., 728 F. Supp. 2d 1347 (S.D. Fla. 2010) [individual defendant's brother-in-law rendered advice that had no basis in established precedent] and Helton v. Factor 5, Inc., 26 F. Supp. 3d 913 (N.D. Calif. 2014)[employer failed to adopt advice of experienced employment counsel] with cases like Rakip v. Paradise Awnings Corp., 2010 U.S. Dist.

LEXIS 117193  (S.D. Fla. 2010) [factor in determining good faith is whether advice sought was reasonable]; Mumby v. Pure Energy Servs USA, Inc., 636 F.3d.1266 (10th Cir. 2011) [lawyer with basic knowledge of FLSA]. Bustamonte v. D.O. Products LLC, 2017 U.S. Dist. LEXIS 140744 (D.C. N.J. 2017) and Delheim v. KDFW-TV, 712 F. Supp. 533, 539 (N.D. Tex. 1989)[employer sought advice from experienced labor counsel].

It is especially important for Defendants' ability to counter Plaintiff's evidence of willfulness that they be able to provide *specific* testimony about their long-term relationship with a **_named_** law firm and **_a named_** lawyer.  Jurors are swayed by specificity, not vagueness. Vague statements that Defendants consulted "a law firm" or "a lawyer" destroys the persuasiveness of their testimony.   It would be akin to a motorist in an accident case testifying that he "had the right-of way" rather than stating he had the "green" light.  The latter obviously is more persuasive to a jury.  Any experienced trial attorney would confirm that a witness's ability to testify crisply and in detail is a factor that establishes his credibility with a  jury.

An important element of Defendants' evidence to counter Plaintiff's evidence of willfulness is to establish when and from whom they first sought legal advice concerning the FLSA.   That will be proven by introduction of an invoice rendered to HOSSAIN in 2004 by Langbein & Langbein, P.A. which references advice given regarding the FLSA. HOSSAIN testified at his deposition that he did not keep a copy of this invoice because it was over 13 years ago.   Defendants need to show a copy of the invoice to HOSSAIN to have him authenticate it.   A redacted invoice without the name of a specific law firm at the top will leave jurors wondering if the invoice was fabricated.  See arguments, *supra*, at Section III.

There have been many lawyers who have both provided advice to a client and then served as their trial attorney.   Defendants could not find a single case where the client was prohibited from mentioning the name of the law firm or the specific lawyer who was consulted just because the lawyer also was trial counsel.  Precluding Defendants from doing so would give Plaintiff a distinct advantage before the jury because the identity of his *trial lawyer whom he also consulted for advice will be will be apparent to the jury.* Moreover, the fact that four of the prior lawsuits which will be offered as proof of willfulness were filed by Mr. Zidell may establish in the jurors' minds *his status* as an attorney knowledgeable in the FLSA.   Defendants should be accorded the same ability to establish their representative's knowledge in the FLSA *in defending those cases*.

Plaintiff cannot have it both ways.   He cannot present a case for willfulness by pointing to specific prior lawsuits filed against them and then stifle Defendants' ability to counter with evidence of good faith by showing that they sought legal advice from a specific lawyer with a specific law firm who had specific knowledge of the FLSA on specific dates and times.    For these reasons,  Defendants should be permitted to testify about their long-term relationship with Langbein & Langbein, P.A. and identify Mrs. Langbein by name.

WHEREFORE, Defendants respectfully request that the Court enter an order precluding Plaintiff from addressing the jury on the issues specified in paragraphs 1-6 above and allowing Defendants to offer the evidence specified in paragraphs 7-8.

Respectfully Submitted,

LANGBEIN & LANGBEIN, P.A.
Counsel for the Defendants
8181 NW 154th Street, Suite 105
Miami Lakes, FL 33016
Tel:   (305) 556-3663
Fax: (305) 556-3647

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a copy of the foregoing was filed electronically on January 2, 2017 through CM/ECF and that a copy of the foregoing will be served via notification through CM/ECF on all counsel or parties of record on the attached service list:

By:_/s/ Leslie W. Langbein
        Leslie W. Langbein, Esq.
        Fla. Bar No. 305391

<u>SERVICE LIST</u>

J.H. ZIDELL, P.A.
Rivkah Jaff, Esq.
Neil Tobak, Esq.
David Kelly, Esq.
300 71st Street, Suite 605
Miami Beach, FL 33141
Tel: (305) 865-6766
Fax: (305) 865-7167
Rivkah.Jaff@gmail.com