IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO.:  16-24362-cv-LENARD/GOODMAN

LUIS REYES, on behalf of himself and
others similarly situated,

      Plaintiff.

v.

COLLINS & 74TH STREET, INC. and
MOHAMMED S. HOSSAIN,

      Defendants.

_____/

## DEFENDANTS' REPLY IN SUPPORT OF THEIR OMNIBUS MOTION *IN LIMINE*

Defendants, COLLINS & 74TH STREET, INC ("Market") and MOHAMMED S. HOSSAIN, serve this reply in support of their Omnibus Motion *in Limine*  ("the Motion").

### The Motion is Not Untimely

Plaintiff's argument that portions of the Motion are untimely because they concern the admittance, rather than exclusion, of evidence is meritless.   His singular support for this position is a definition from Black's Law Dictionary.    Case law, on the other hand, instructs that the purpose of a motion *in limine* is to enable a court to rule in advance of trial on the relevance of certain forecasted evidence.   Pandora Jewelers 1995 v. Pandora Jewelry LLC, 2011 U.S. Dist. LEXIS 62969 (S.D. Fla. 2011).  A motion seeking an advanced ruling on admission of certain types of evidence just as easily advances the orderly, efficient use of trial time.  See *SEC v. BankAtlantic Bancorp.Inc*, 2013 U.S. Dist. LEXIS 191264 (S.D. Fla. 2013) ["A motion in limine is made before a trial has begun for the purpose of excluding or including certain evidence].

Page **1** of **11**

A.    Evidence of Prior or Current Lawsuits

Plaintiff responds that he _must_ use evidence or testimony about _every_ prior lawsuit filed against Defendants to establish willfulness. While evidence of other lawsuits is admissible to show that an employer was on notice to re-examine its practices, there are limitations. The four-part test for admissibility of prior lawsuits used in the 6th Circuit should apply here to determine what, if any, evidence or testimony concerning prior lawsuits against Defendants may be offered by Plaintiff.

The first test factor enunciated by the 6th Circuit incorporates Rule 404, that is, the evidence which Plaintiff seeks to offer must be directed toward establishing something other than Defendants' propensity to commit **_the act charged_**.  Second, each prior lawsuit act must be similar enough and close enough in time to be relevant to the issues that will be presented to the jury in this case.  Third, the evidence must be such that the jury could find _that the prior act actually occurred_ and that Defendants committed it, and fourth, the prejudicial effect of the evidence must not clearly outweigh its probative value in accordance with Rule 403.  See, Haley v. Kundu, 2013 U.S. Dist. LEXIS 191206 (E.D. Tenn. 2013).

Plaintiff's response fails to analyze these criteria.  Had he done so, it would be apparent that he cannot meet the 6th Circuit's test. As noted in the Motion, the first two lawsuits (filed in 2007 and 2008) occurred before Mr. Hossain owned Collins & 74th Street.  Those lawsuits, therefore, do not show that he --"the party in question"-- who committed the prior acts.   Additionally, the 2007 lawsuit alleged retaliation, which is not

an issue here. [1] The 2008 lawsuit did not involve a claim of working "off the clock".

Moreover, both lawsuits concern events that are nearly 9 years earlier so they are not

close in time.   So these two lawsuits do not meet the second or third elements.

Analysis likewise prevents Plaintiff from offering testimony or evidence about the

three more recent lawsuits. The 2014 lawsuit was brought by two brothers. The first

plaintiff, Buenaventura Calderon, was employed in an exempt position very different

than the position Plaintiff held.    Buenaventura Calderon was paid a salary whereas

Plaintiff was paid on an hourly basis.   While the second brother, Lorenzo Calderon,

alleged the same acts at issue here, his claim also involved retaliation. These

dissimilarities prevent Plaintiff from meeting the second element.   Because the Reyes

Montes lawsuit in 2015 was the mirror image of Lorenzo Calderon's and Defendants

were granted *summary judgment on his retaliation claim*, it should be excluded as well.

Importantly, the claims made in the Calderon, Reyes Montes and Sarmiento

lawsuits ***overlap in time with the period for which Plaintiff seeks overtime.***  These

lawsuits could not have placed Defendants on notice of a need to re-examine their

wage and hours practices because the events *were concurrent*.   Indeed, the Reyes

Montes lawsuit and the Sarmiento lawsuits were filed within 6 weeks of each other.

Therefore, testimony or evidence about these previous lawsuits do not serve the

evidentiary purpose for which they would be offered- to establish prior knowledge.

Plaintiff also cannot meet the third element as to these lawsuits, that *a jury could*

*find that the acts occurred* and that Defendants committed it.   The 2008, 2014 and the

two 2015 lawsuits all were settled *without a determination or admission of liability*.   The

---

[1]    The then owners of the Market were granted summary judgment on the retaliation
count.

settlement agreements all recite that the cases were being settled *by the parties (not just Defendants)* to prevent distraction and additional expense. Each settlement agreement prohibited Plaintiff's attorneys from using the settlement of the lawsuits (and therefore the lawsuits themselves) as proof of willfulness.

Plaintiff not only fails to address these hurdles but also the consequent use of trial time to present 4 "me-too" witnesses. He argues that Defendants have not conclusively established that their testimony will delay conclusion or the trial or engender confusion.  The number of court opinions addressing these two issues in the context of "me-too" evidence almost makes these facts worthy of judicial notice.  In *United States v. Colwell*, 140 Fed Appx. 64 (11th Cir. 2005),  the 11th Circuit pronounced that under Rule 403 a district court should consider the amount of time it would have taken the parties to present the evidence, how the evidence would affect the focus of the trial, and whether it would have "diverted the jury's attention from the real issue in the case."   Plaintiff's presentation of 4 "me-too" witnesses who are prior plaintiffs will likely take an entire morning or the most part of an afternoon, considering the time necessary for direct, cross and re-direct examination of each witness.  Each witness' tale will turn into a "mini-trial" on the merits of their claims. Cross-examination will encompass issues of bias and their interrelationships with each other and Mr. Zidell.

***Cumulative to*** the 4 prior plaintiffs, Plaintiff also has listed ***7 former co-workers*** as trial witnesses. Presumably they, too, will offer "me-too" testimony.   This will nearly triple the amount of trial time that will be used to present non-party claims and

undoubtedly consume another whole trial day with additional "mini-trials".[2]   Thus, "me too" testimony will overcome the central focus of the trial: the merits of Plaintiff's claim. If this occurs, Defendants, who thought they bought peace by settling claims, will be ambushed at trial by having to defend stale claims with faded memories, rebuttal evidence which may no longer exist and counter-witnesses whom they cannot present to dispute the claim by the prior plaintiffs and unknown claims by former employees.

At the end of the analysis, it becomes clear that Plaintiff's true reason for presenting "me-too" evidence or testimony is to establish propensity and thereby prejudice Defendants before the jury as "bad actors."   Plaintiff just as easily (and without delay and confusion of the trial proceedings) can establish willfulness through examination of Mr. Hossain who admitted at his 8/18/17 deposition that he consulted a lawyer to determine his obligations under the FLSA in 2004 (before he owned Collins & 74th Street) and that he was aware of the obligations to pay time and a half and record all employee work hours.

The mere fact that the three most recent FLSA lawsuits were filed in a short period of time establishes only one fact:  that three FLSA lawsuits were filed in a short period of time.   None of these claims were adjudicated on the merits; they were all settled with no admission of liability and none have evidentiary value.   And even if they had any evidentiary value, their admissibility is far outweighed by the undue prejudice Defendants will suffer by being ambushed at trial without means to defend against the

---

[2]   Defendants liken what will occur at trial in this case to the last episode of "Seinfeld" in which Jerry's trial on a minor offense ended up as a spectacle and indictment of his centrist life by major characters in the series who appeared as witnesses.

claims, and by testimony that conjures propensity in the mind of the jury.   See Rules 403 and 404.

B.   The Tender Letter

Plaintiff argues that the tender letter does not fall within Rule 408 because it was not an offer to settle the full claim, citing *Utah Reverse Exchange LLC v. Donado*, 2015 U.S. Dist. LEXIS 11586 (S.D. Ala. 2015).   The difference is that the communication in that case was simply a demand.   Case law holds that demands are not offers to compromise.   See *Hernandez-Sabillon v. Naturally Delicious, Inc.* 2015 U.S. Dist. LEXIS 171256 (S.D. Fla. 2015).   Defendants' letter, on the other hand, offered to settle whatever portion of Plaintiff's claim resulted from *computational errors made in his pay.* Plaintiff **rejected Defendants' compromise** and he now seeks to introduce the tender letter *as an admission of liability*.   Indeed, Plaintiff's summary judgment argues that the tender letter **established liability,** [3]-- precisely the type of use prohibited by Rule 408.

Plaintiff argues that because the letter was not marked "Confidential – For Settlement Purposes Only" it was not intended to be an offer to compromise.   While marking a document as "confidential" is a factor considered by courts in determining whether a communication is intended an offer to compromise, the existence or non-existence of such language is not the focal point.   As Judge Covington noted in *Specialized Trans. Of Tampa Bay, Inc. v. Nestle Waters N. Amer. Inc.*, 2008 U.S. Dist. LEXIS 116689 (M.D. Fla. 2008) – cited by Plaintiff—

---

[3]   Plaintiff also argues that because he never accepted the offer nor responded with a counter-offer, the tender letter was not a settlement communication.   The fact that an offer is not accepted or does not produce a counter-offer is not dispositive of the nature and intent of the communication.

"In addition to excluding evidence created for the purpose of *facilitating on-going settlement negotiations*, it is also appropriate and contemplated by the Rule that courts exclude evidence which **clearly communicates an offer to settle a claim**.   [E.S.].    Some attorneys mark such communications as "confidential settlement communications." …"

Defendants' tender letter clearly was meant to facilitate settlement discussions.  And it clearly communicated an offer to settle some part of Plaintiff's potential claim *but only as to errors in calculating Plaintiff's pay*.     The fact that Defendants' counsel noted on the record that a letter was hand-delivered to Plaintiff's counsel prior to Mr. Hossain's deposition and Plaintiff's counsel chose to use the letter as an area of examination at the deposition also is not dispositive.    Rule 26's expansive definition of "relevance" opens many areas to inquiry at deposition that ultimately may never be admissible at trial.  Defendants' ability to object to such an inquiry at deposition is limited to claims of privilege.

Nor is the tender letter an admission of liability.    Nothing in the tender letter admits that Plaintiff worked "off the clock" or that he was not paid for his overtime hours at time and a half pay. [4]   The letter offered to pay for time that was clocked but inadvertently not counted in calculating pay.  That is precisely why the letter advised Plaintiff that he could accept the offer and still preserved his right to continue the case. Therefore, the letter is neither admissible under Rule 408 or Rule 801(d).

III.    Plaintiff's "Proof" that He Worked "Off the Clock."

Plaintiff cites *Mt. Clemens Pottery* as the standard for a relaxed burden of proof. However, nothing in U.S. Supreme Court's opinion in *Mt Clemens Pottery* indicates that

---

[4]    Indeed, Plaintiff's paystubs show that Defendants paid him at a time and a half rate when he worked over 40 hours in a pay period.  Why would Defendants admit otherwise ?

it intended the phrase "sufficient evidence" to relieve a plaintiff from the burdens of the Federal Rules of Evidence.    Rather the term "sufficient evidence" relates to what types of admissible evidence may be offered by a plaintiff.  *Prime Communications Inc. v. Sylvester*, 615 NE 2d 600 (Mass. App. 1993).  The evidence or testimony still must meet the tests for admissibility and the preponderance of evidence burden of proof.  *Myers v. Copper Cellar Corp.*, 192 F.3d 546, 551 (6th Cir. 1999) .  For example, a plaintiff cannot meet his burden of proof even under the relaxed standards of *Mt. Clemens Pottery* by offering testimony that " My co-worker told me he say me at work", clearly hearsay.

Plaintiff dances around the issue of the document's authenticity. He attempts to justify his destruction of the original as "never anticipating that he would bring a lawsuit against Defendants at the time he maintained the document."  See, Response, p. 10. This explanation is as unworthy of credence as the document itself.  Plaintiff's admitted destruction of such a key document and his refusal to produce the similar one *still in his possession* (a discovery violation) raise an inference that the document is not what it purports to be and is inadmissible under Rules 901(a) and 1004.

IV.    "Me Too" Evidence

Defendants refer the Court to their argument in Section A above.

V.    Hiring of Illegal Aliens or Other Character Evidence

Plaintiff offers no cases in which courts have permitted introduction of, or reference to, an employer's hiring practices when the issue before the jury is unrelated to hiring practices.   Indeed, in *Romero v. Reiman Corp*, 2012 U.S, Dist LEXIS 194044 (D. Wyoming 2012),a motion in limine on this issue was granted because the

employer's hiring practices were not the causation of the plaintiff's injury. The sole purpose of any such evidence is to establish bad acts under Rule 404.  Even if it were relevant in some fashion, the relevance is so inconsequential  that the undue prejudice Defendants would suffer from introduction or reference to such evidence weighs in favor of its exclusion under Rule 403.

VI.   <u>Financial Worth</u>

Plaintiff's counter-argument about the relevance of Defendants' wealth or assets is as strained as could be. Volume of business in an FLSA case has only one relevant purpose:  to enterprise coverage.  Defendants admitted enterprise coverage, therefore, end of story.

Defendants' wealth, assets or volume of business have no relevance to Plaintiff's wages; he always was paid above minimum wage, received several raises and his paystubs show ***<u>he was paid at a time and a half rate for hours over 40 in a work week</u>***.   Nor is there any <u>logical</u> correlation between Defendants' volume of sales and Plaintiff's need to work more hours.  Plaintiff stocked shelves.  If a shelf ran low of merchandise during the day, it was his job to re-fill it.  If he usually re-filled the shelf once a day but had to do so 2 or 3 times more because of the volume of customers who purchased the product, the work was still done during his shift.  Even if Defendants' volume of business had the most minimal relevance to any issue, inquiry into this area certainly would be outweighed by the danger of undue prejudice Defendants would suffer from a jury considering their revenue, income, assets or Mr. Hossain's life style. *Del Rosario v. Labor Ready*, 2015 U.S. Dist. LEXIS, 180934 (S.D. Fla. 2015).

VII.   <u>Evidence of J.H. Zidell P.A.'s involvement in Prior Lawsuits Against Defendants and Similarity of Allegations to Counter Willfulness</u>

Plaintiff's response is largely addressed to the timeliness of the Motion.   He does not rebut any argument that information about Mr. Zidell's prior representation of certain prior plaintiffs can be used in cross-examination to establish bias or to contradict his claim of willfulness by establishing an inference that Plaintiff's lawsuit is just another "copy-cat" lawsuit.   While Plaintiff suggests that the issue should be decided at trial, Defendants pose it pre-trial to avoid any possible motion for mistrial.

VIII.   <u>Mention of Langbein & Langbein, P.A. and Leslie W. Langbein, Esq.</u>

Plaintiff threatens that if Mrs. Langbein is identified as Mr. Hossain's long-time employment counsel at trial, he will call her as a witness (ostensibly to have her disqualified mid-trial.)   The threat is in lieu of argument that specific information about Mrs. Langbein's identity is relevant and bears on the credibility of Defendants' testimony to show they did not ignore their obligations under the FLSA and were justified in relying on Mrs. Langbein's advice.   Mrs. Langbein's identity is relevant to in the following scenario at trial (at the very least):

It is anticipated that Maximo Hernandez, one of Plaintiff's former co-workers who is designated as trial witness, will be presented as a "me-too" witness.   That will cause Defendants to cross-examine him concerning bias and his referral of Plaintiff and Reyes Montes to Mr. Zidell's law firm for representation.   If Mr. Hernandez responds that he knows Mr. Zidell to be an expert in the field of wage and hours law, then it creates an "unlevel playing field"   and opens the door to identifying Mrs. Langbein also as an attorney who also has experience in the field of wage and hour law and is the attorney who provided Defendants with advice on the FLSA.

WHEREFORE, Defendants respectfully request that the Court enter an order precluding Plaintiff from addressing the jury on the issues specified in paragraphs 1-6 above and allowing Defendants to offer the evidence specified in paragraphs 7-8.

Respectfully Submitted,

LANGBEIN & LANGBEIN, P.A.
Counsel for the Defendants
8181 NW 154th Street, Suite 105
Miami Lakes, FL 33016
Tel:   (305) 556-3663
Fax: (305) 556-3647

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a copy of the foregoing was filed electronically on January 22, 2018 through CM/ECF and that a copy of the foregoing will be served via notification through CM/ECF on all counsel or parties of record on the attached service list:

By:  /s/ Leslie W. Langbein
        Leslie W. Langbein, Esq.
        Fla. Bar No. 305391

<u>SERVICE LIST</u>

J.H. ZIDELL, P.A.
Rivkah Jaff, Esq.
Neil Tobak, Esq.
David Kelly, Esq.
300 71st Street, Suite 605
Miami Beach, FL 33141
Tel: (305) 865-6766
Fax: (305) 865-7167
Rivkah.Jaff@gmail.com