# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-24362-CIV-LENARD/GOODMAN

**LUIS REYES,**

      Plaintiff,

**v.**

**COLLINS & 74TH STREET, INC.,**
**and MOHAMMED S. HOSSAIN,**

      Defendants.

_____/

**OMNIBUS ORDER DENYING AS MOOT PLAINTIFF'S _DAUBERT_ MOTION AND TO STRIKE EXPERT WITNESS, LESLIE LANGBEIN, ESQ. (D.E. 123), GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION _IN LIMINE_ (D.E. 139), AND GRANTING IN PART, DENYING IN PART, AND DEFERRING RULING ON IN PART DEFENDANTS' OMNIBUS MOTION _IN LIMINE_ TO PRECLUDE IRRELEVANT OR PREJUDICIAL TESTIMONY AND EVIDENCE AND TO PERMIT CERTAIN AREAS OF INQUIRTY (D.E. 140)**

**THIS CAUSE** is before the Court on Plaintiff's <u>Daubert</u> Motion and to Strike Expert Witness, Leslie Langbein, Esq., ("<u>Daubert</u> Motion," D.E. 123), filed September 14, 2017. Defendants filed a Response on September 29, 2017, (D.E. 131), to which Plaintiff filed a Reply on October 3, 2017, (D.E. 133).

Also before the Court is Plaintiff's Motion in Limine, ("Plaintiff's Motion," D.E. 139), filed December 29, 2017. Defendants filed a Response on January 10, 2018, (D.E. 143), to which Plaintiff filed a Reply on January 17, 2018, (D.E. 153).

Also before the Court is Defendants' Omnibus Motion in Limine, ("Defendants' Motion," D.E. 140), filed January 2, 2018.  Plaintiff filed a Response on January 16, 2018, (D.E. 144), to which Defendants filed a Reply on January 22, 2018, (D.E. 156).

Upon review of the Motions, Responses, Replies, and the record, the Court finds as follows.

## I.      Background

Plaintiff is a former employee of Defendants' grocery store in Miami Beach ("the Market").  (Joint Statement of Case, D.E. 163.)  Plaintiff initiated this lawsuit alleging unpaid overtime wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-216.  (Id.)

On May 9, 2017, Plaintiff filed a Motion to Disqualify Defense Counsel and her Firm and to Compel Defense Counsel's Deposition Duces Tecum.  (D.E. 39.)  The basis of this motion was that Defendant Mohammed S. Hossain testified during his deposition that any violation of the FLSA was made in good faith and on the advice of defense counsel, Leslie Langbein, Esq.  (Id. ¶ 5.)  As such, Plaintiff argued that Ms. Langbein is a material witness and should not have been retained to defend this matter.  (Id. ¶ 6.)  The Court referred the Motion to Magistrate Judge Jonathan Goodman.  (D.E. 40.)

On June 30, 2017, Judge Goodman issued the first of two orders on the issue, which addressed Plaintiff's request to depose Ms. Langbein.  ("First Order," D.E. 78.)  Judge Goodman found that because Defendants are seeking to apply a two-year statute of limitations, they have waived the attorney-client privilege and, therefore, could take Ms. Langbein's deposition.  (Id. at 2.)

2

On November 14, 2017, Judge Goodman issued his second order on the issue, finding that disqualifying Ms. Langbein was unwarranted.  ("Second Order," D.E. 138.) Specifically:

> Defendants have already advised that they do not intend to call their attorney, Leslie Langbein, as a trial witness.  In addition, Ms. Langbein's testimony is not adverse to her client.  And her clients are themselves able to testify about FLSA advice they received.  Ms. Langbein is therefore not a necessary witness.  As a result, disqualification under Rule 4-3.7 of Florida's Rules of Professional Conduct is not warranted.[1]  Pharma Supply, Inc. v. Stein, No. 14-80374, 2014 U.S. Dist. LEXIS 120313, at **12-13 (S.D. Fla. Aug. 28, 2014) (denying motion to disqualify after noting that Rule 4-3.7 is "generally not implicated when a party does not intend to call its own lawyer as a witness" and pointing out that an attorney called by the opposing counsel will be disqualified only "if the attorney's testimony will be sufficiently adverse to the factual assertions or account of events offered on behalf of the client.") (internal citations and quotation omitted).

(Id. at 2-3 (footnote in original).)  However, Judge Goodman expressed concern that Ms. Langbein's credibility could indirectly be put before the jury if, for example, she questioned Mr. Hossain at trial regarding the advice she gave him as to FLSA compliance.  (Id. at 3-5.)  Therefore, Judge Goodman ruled that:

> Defendants may not specifically identify Ms. Langbein and/or her law firm as the attorneys who provided FLSA compliance advice, and Ms. Langbein will be prohibited from mentioning it in any way, including during jury selection, opening statement, and closing argument. Defendants may, however, testify that they obtained legal advice and what it was (without identifying the specific attorney or law firm). If Plaintiff's counsel opens

---

[1]     That rule, entitled "Lawyer as Witness," provides as follows: "A lawyer shall not act as advocate at trial in which the lawyer is likely to be a necessary witness on behalf of the client unless: (1) the testimony relates to an uncontested issue; (2) the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony; (3) the testimony relates to the nature and value of legal services rendered in the case; or (4) disqualification of the lawyer would work substantial hardship on the client." Rule 4-3.7, Florida Bar Rules of Professional Conduct (emphasis added).

3

the door by asking questions which require a defense witness to disclose Ms. Langbein's identity as the advice-providing attorney or by otherwise mentioning that history, then Ms. Langbein and her clients are free to provide additional testimony.[2]

(Id. at 4-5 (footnote in original).)

## II.   **Daubert Motion**

Before Judge Goodman issued his second order finding that disqualification was unwarranted, Plaintiff filed his Daubert Motion. (D.E. 123.)  Therein, he argues that Ms. Langbein is a necessary witness and that Plaintiff intends to call her as a witness even if Defendants do not. (Id. ¶ 8.)  However, they argue that she should be precluded from testifying as an expert with regard to the FLSA compliance advice that she gave Defendants. (Id. ¶ 9.)

In their Response, Defendants argue that the Daubert Motion was entirely unnecessary because Ms. Langbein was not designated as an expert, and Defendants do not need or intend to rely on Ms. Langbein's testimony at trial. (D.E. 131 at 1-2.)  They argue that Plaintiff filed the Daubert Motion in the event that Judge Goodman, who had not yet issued his second order, granted the Motion to Disqualify because Ms. Langbein was a necessary witness. (Id. at 2.)  However, Judge Goodman denied the Motion to Disqualify, finding that Ms. Langbein is not a necessary witness. (D.E. 138 at 1-2.)

In his Reply, Plaintiff states that he "has made known during the discovery process and in writing that Plaintiff intended to call Ms. Langbein as a fact witness in the case at bar." (D.E. 133 ¶ 3 (emphasis added).)

---

[2]    At the risk of stating the obvious, this ruling is subject to a final evidentiary decision by Judge Lenard, who will be presiding over the trial.

Accordingly, <u>no party</u> intends to call Ms. Langbein to testify as an expert, and therefore Plaintiff's <u>Daubert</u> Motion and to Strike Expert Witness, Leslie Langbein, Esq. is **DENIED AS MOOT**.

## III.   Motions in Limine

A motion in limine presents a trial court with pretrial issues regarding admissibility of evidence that a party is likely to present at trial.  <u>See</u> <u>Begualg Inv. Mgmt., Inc. v. Four Seasons Hotel Ltd.</u>, No. 10-22153-CIV, 2013 WL 750309, at *1 (S.D. Fla. Feb. 27, 2013).  "The real purpose of a motion <u>in</u> <u>limine</u> is to give the trial judge notice of the movant's position so as to avoid the introduction of damaging evidence, which may irretrievably affect the fairness of the trial."  <u>Id</u>.

Generally, "[m]otions <u>in</u> <u>limine</u> are disfavored."  <u>Id</u>.  "In fairness to the parties and their ability to put on their case, a court should exclude evidence <u>in limine</u> only when it is clearly inadmissible on all potential grounds."  <u>United States v. Gonzalez</u>, 718 F. Supp. 2d 1341, 1345 (S.D. Fla. 2010).  Accordingly, if evidence is not clearly inadmissible, "evidentiary rulings should be deferred until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context."  <u>Id</u>. (internal citation and quotation marks omitted).  Even when a trial court does rule in limine, its ruling "remains subject to reconsideration by the court throughout the trial" and the parties may renew their objections as appropriate.  <u>Stewart v. Hooters of Am., Inc.</u>, No. 8:04–cv–40–T–17–MAP, 2007 WL 1752843, at *1 (M.D. Fla. June 18, 2007).

### a.    Plaintiff's Motion In Limine

Plaintiff moves <u>in limine</u> to exclude reference to, evidence of, or argument regarding the following issues:

1. attorneys' fees and costs;

2. liquidated damages;

3. Plaintiff's counsel's law firm's representation of Plaintiff;

4. Plaintiff's payment or non-payment of federal income taxes and reporting of cash payments on said taxes;

5. Plaintiff's arrests, convictions, pleas of <u>nolo contendere</u>, and pending criminal cases, if any; and

6. the identity of Ms. Langbein and/or her law firm as the attorneys who allegedly provided FLSA compliance advice and Ms. Langebein  mentioning it in any way, including, without limitation, during jury selection, opening statements, closing arguments, and during trial.

(D.E. 139 at 1-2.)

### 1.    Attorneys' fees and costs

Because Defendants do not oppose excluding references to attorneys' fees and costs, (D.E. 143 at 1), the Motion is **GRANTED** as to that issue.

### 2.    Liquidated Damages

Because Defendants do not oppose excluding references to liquidated damages, (D.E. 143 at 1), the Motion is **GRANTED** as to that issue.

### 3.      Plaintiff's counsel's law firm

Next, Plaintiff moves under Federal Rule of Evidence 403 to exclude any reference to issues concerning his counsel's law firm's ("Mr. Zidell's Firm") representation of him, how Plaintiff obtained them, their fee/retainer agreement, etc. (Pl.'s Mot. at 3-4.)  He argues that the probative value of such information is substantially outweighed by the danger of unfair prejudice and confusion.  (Id.)

As Defendants point out in their Response, Plaintiff does not explain <u>why</u> this information is unfairly prejudicial or confusing, or identify what conclusion he fears the jury will draw from this information.  (D.E. 143 at 2.)  Defendants note that the Court will make reference to Mr. Zidell's Firm in <u>voir dire</u>, and that if a potential juror responds that he or she is familiar with plaintiff's counsel or the law firm then Defendants are entitled to explore those answers.  (Id.)  Additionally, Defendants argue that if Plaintiff offers testimony of other individuals who have sued Defendants under the FLSA, Defendants should be permitted to introduce settlement agreements to establish bias through their prior or current association with Mr. Zidell's Firm.  (Id. at 2-3 (citing <u>Jeld-wen, Inc. v. Nebula Glass, Int'l Inc.</u>, 2007 U.S. Dist. LEXIS 37134 (S.D. Fla. 2007)).)  Finally, they argue that once Plaintiff has offered evidence on willfulness, Defendants are permitted to offer rebuttal testimony or evidence to prove that willfulness is "less probable than it would be" without evidence of the common link between the prior plaintiffs and Mr. Zidell's law firm.  (Id. at 3-4.)

In his Reply, Plaintiff argues that Mr. Zidell's Firm's involvement in other matters against Defendant is irrelevant to the issues in this case

Under Rule 403, the Court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

The Court cannot determine, based on the Parties' briefs, that <u>any</u> reference to Mr. Zidell's Firm is "<u>clearly</u> inadmissible on <u>all</u> potential grounds." <u>Gonzalez</u>, 718 F. Supp. 2d at 1345 (emphases added). If evidence is not clearly inadmissible, "evidentiary rulings should be deferred until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context." <u>Id</u>. (internal citation and quotation marks omitted). Nor can the Court say, based on the Parties' briefs, that the probative value of <u>any</u> reference to Mr. Zidell's Firm is "substantially outweighed" by the danger of unfair prejudice or confusion. Fed. R. Evid. 403. Therefore, Plaintiffs' motion in limine to exclude such evidence is **DENIED**.

### 4.    Plaintiff's taxes

Next, Plaintiff seeks to exclude under Rule 403 any reference to Plaintiff's payment or non-payment of federal income taxes and reporting of cash payments on said taxes. (Pl.'s Mot. at 4.) He argues that the probative value of such evidence is substantially outweighed by the danger of unfair prejudice and confusion of the issues. (<u>Id</u>.)

Defendants argue that courts commonly allow cross-examination about a party's income tax filings under Rule 608(b) as impeachment evidence because falsely reporting income on a tax return directly bears on a witness's propensity for truthfulness. (D.E.

143 at 4-5 (citing <u>United States v. Jones</u>, 900 F.2d 512, 520 (2d Cir. 1990); <u>Rakip v. Paradise Awnings, Inc.</u>, 2011 U.S. Dist. LEXIS 151368 (S.D. Fla. 2012); <u>Blake v. Batmasian</u>, 2017 U.S. Dist. LEXIS 26712 (S.D. Fla. 2017); <u>Perez v. Anastacia M. Garcia, P.A.</u>, 2015 U.S. Dist. LEXIS 101845 (S.D. Fla. 2015)).)  Defendants argue that Plaintiff's credibility at trial is "paramount" to Defendants' defense.  (<u>Id.</u> at 5.)  Defendants further argue that the tax returns are relevant for another reason: Plaintiff claims that he was paid for overtime hours <u>in cash</u> (but not at a time-and-a-half rate), which makes the fact that he did not report cash earnings on his tax returns probative of their defense that Defendants never paid anyone in cash.  (<u>Id.</u>)

The Court finds that evidence regarding Plaintiff's tax returns is not "clearly inadmissible on all potential grounds."  <u>Gonzalez</u>, 718 F. Supp. 2d at 1345.  Cross-examining a party about their failure to pay taxes is relevant for impeachment purposes under Rule 608(b).  <u>Rakip</u>, 2011 WL 6029981, at *4.  If evidence is not clearly inadmissible, "evidentiary rulings should be deferred until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context."  <u>Id</u>. (internal citation and quotation marks omitted).  Therefore, Plaintiffs' motion in limine to exclude such evidence is **DENIED**.

### 5.    **Plaintiff's arrests, convictions, <u>nolo contendere</u> pleas, and pending criminal cases (if any)**

Next, Plaintiff seeks to exclude any reference to his arrests, convictions, <u>nolo contendere</u> pleas, and any pending criminal cases he might have.  (Pl.'s Mot. at 7.)  He argues that such information is inadmissible under Rule 609(b) because its probative

value does not substantially outweigh its prejudicial effect, is irrelevant under Rules 401 and 402, constitutes impermissible character evidence under Rule 404(b), and should be excluded under Rule 403 because its probative value is substantially outweighed by the danger of unfair prejudice.  (Id. at 7-9)

In their Response, Defendants argue that Plaintiff lied about his prior legal affairs in his Answers to Interrogatories 11 and 13, and that they are permitted to impeach him under Rule 608(b) by showing that those answers were false.  Interrogatory 11 asked:

> State whether You have been arrested or detained by a law enforcement agency including INS or Department of Homeland Security during the past 10 years. For each arrest or detainment, state the date, location (city and state or city and country) and reason for Your arrest or detainment and the outcome of the arrest (i.e., charges were dropped, case went to court, placed on probation, served jail time, etc).

(D.E. 143 at 5.)  Plaintiff answered: "I have not been arrested or detained in the last 10 years."  (Id. at 6.)  Interrogatory 13 asked:

> Identify all legal matters, including but not limited to court cases, worker's compensation proceedings; administrative proceedings, and traffic proceedings in which you were named or appeared as a party or appeared as a witness from 2011 to present.  For each such legal matter, please state Your capacity in the matter (witness or party), the county and state (or the style and jurisdiction) of the legal matter; and whether You provided testimony in the legal matter either at hearing, trial or through deposition.

(Id.)  Plaintiff answered: "None."  (Id.)

In his Reply, Plaintiff argues that his Answers to Interrogatories 11 and 13 were accurate and correct.  (D.E. 153 at 7.)

Rule 608(b), provides: "Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to

attack or support the witness's character for truthfulness.  But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of the witness[.]"  If Plaintiff lied about his legal history in his Answers to Interrogatories, it may be admissible as impeachment under Rule 608(b). See Sango v. City of New York, No. 83 CV 5177, 1989 WL 86995, at *18-19 (E.D.N.Y. July 25, 1989) (noting that the Court had discretion to permit cross-examination into prior crimes that were not covered by Rule 609 because the witness lied about them in his answers to interrogatories, but finding that they should be excluded).

Additionally, if Plaintiff lied in his Answers to Interrogatories, certain prior convictions may be admissible under Rule 609, which provides, in relevant part:

> **(a)**   The following rules apply to attacking a witness's character for truthfulness by evidence of a criminal conviction:
>
>> **(1)** for a crime that, in the convicting jurisdiction, was punishable by death or by imprisonment for more than one year, the evidence:
>>
>>> **(A)** must be admitted, subject to Rule 403, in a civil case or in a criminal case in which the witness is not a defendant; . . .
>>
>> **(2)** for any crime regardless of the punishment, the evidence must be admitted if the court can readily determine that establishing the elements of the crime required proving--or the witness's admitting--a dishonest act or false statement.
>
> **(b) Limit on Using the Evidence After 10 Years.** This subdivision (b) applies if more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later. Evidence of the conviction is admissible only if:
>
>> **(1)** its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect; and

> **(2)** the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use.

Thus, if Plaintiff lied in his Answer to Interrogatory 11, and he was convicted within the past ten years of a crime which required proof or admission of a dishonest act or false statement, the conviction may be admissible (subject to Rule 609(b)).  Fed. R. Evid. 609(a)(2).  However, without any information regarding Plaintiff's prior legal issues, the Court cannot (1) determine whether Plaintiff actually lied in his Answers to Interrogatories 11 and 13, or (2) even if he did, perform a balancing test under Rules 609(b) and 403.

For these reasons, evidence of Plaintiff's prior convictions, arrests, pleas, and pending criminal cases is not "clearly inadmissible on all potential grounds."  Gonzalez, 718 F. Supp. 2d at 1345.  If evidence is not clearly inadmissible, "evidentiary rulings should be deferred until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context."  Id. (internal citation and quotation marks omitted).  Therefore, Plaintiffs' motion in limine to exclude such evidence is **DENIED**. The Court may take up the issue, if necessary, prior to or during trial and outside the presence of the jury.

### 6.    Reference to Ms. Langbein as the Attorney/Law Firm who Provided Defendants with FLSA Compliance Advice

Finally, Plaintiff seeks to exclude any reference to Ms. Langbein as the attorney/law firm that provided FLSA compliance advice to Defendants.  (Pl.'s Mot. at 10.)  Plaintiff specifically requests the Court to adopt the following findings and ruling Judge Goodman made in his Second Order:

12

[T]he Undersigned appreciates Plaintiff's concern that Defendants and/or Ms. Langbein might at trial indirectly raise Ms. Langbein's status as the attorney who provided labor and employment advice for FLSA compliance. Indeed, that is what happened in another FLSA trial, Lopez-Osorio v. Art Landscaping, Corp., No. 15-20614-CIV-AOR.

In the Lopez-Osorio case, Plaintiff's counsel called Alexander Acosta, the Defendant employer's principal, as his first trial witness. During cross-examination (of her own client), Ms. Langbein asked questions which made it plain to the jury that she is the attorney who provided the legal advice. Specifically, she asked the following questions: (1) "Why did you seek out a law firm who had an attorney who was board certified by the Florida Bar?", (2) "Did you hire my law firm?", (3) "Did my law firm represent you in that first lawsuit?", (4) "Now, during the course of that representation, did you have a meeting with the law firm to discuss how you could come into compliance with the FLSA?", and (5) "After you met with our law firm and you were provided some advice, did you implement any changes in your company?" [ECF Nos. 104-2; 104-3].

Ms. Langbein highlighted her involvement in her closing argument: "Mr. Acosta was consistent. He was consistent in his efforts to comply with the law. He got burned one time. He came to see a lawyer. He came to see a lawyer who had experience in employment law and was certified by the Florida Bar. He took that advice and he implemented that advice." [ECF No. 104-3, p. 17].

Thus, at the September 2016 Lopez-Osorio trial [ECF No. 104], Ms. Langbein's credibility was indirectly put before the jury because the jurors knew that she was the attorney who provided legal advice on FLSA compliance to her defense clients. Plaintiff here has expressed concern that a similar situation might occur at trial in this lawsuit. In that earlier lawsuit, the jury returned a verdict for the defendants Art Landscaping, Corp. and Mr. Acosta, and final judgment and a costs judgment (for $4,362.02) were entered in the defendants' favor. Plaintiff says that he is concerned that the jury verdict was caused, at least in part, on the jury's reliance on Ms. Langbein's unofficial role as a de facto witness.

The Undersigned cannot know with certainty why the Lopez-Osorio jury reached the verdict it reached or whether it was in anyway influenced by its knowledge that Ms. Langbein, the defense trial attorney, provided FLSA compliance advice. Nevertheless, it is hardly irrational to suggest that the jury could have been affected in some way by that knowledge. Therefore, to avoid the possibility that a similar scenario might unfold in this case, Defendants may not specifically identify Ms. Langbein and/or her law firm as the attorneys who provided FLSA compliance advice, and Ms. Langbein will be prohibited from mentioning it in any way, including during jury selection, opening statement, and closing argument. Defendants

13

may, however, testify that they obtained legal advice and what it was (without identifying the specific attorney or law firm). If Plaintiff's counsel opens the door by asking questions which require a defense witness to disclose Ms. Langbein's identity as the advice-providing attorney or by otherwise mentioning that history, then Ms. Langbein and her clients are free to provide additional testimony.[3]"

(D.E. 138 at 3-5.)

In their Response, Defendants argue that Lopez-Osorio lost his trial for other reasons.  (D.E. 143 at 7.)  They further argue that they should be able to identify Ms. Langbein as the attorney who gave them advice on FLSA compliance:

[I]t is precisely because Plaintiff's counsel will attempt to elicit highly inflammatory testimony about the number of FLSA lawsuits previously brought against Defendants that Defendants be able to provide specific testimony about their initial request to be referred to a highly experienced employment lawyer, to identify Mrs. Langbein as the attorney to whom they were referred, to introduce an invoice from Page 9 of 10 Langbein & Langbein, P.A. establishing when they first sought her advice on the FLSA, to provide testimony about the FLSA advice Mrs. Langbein provided and how they implemented it, and her firm's involvement in counseling them in employment matters and her representation of them over the years.

(D.E. 143 at 8-9.)

In his Reply, Plaintiff argues that if Defendants identify Ms. Langbein as the attorney who gave them FLSA compliance advice, then Plaintiff will be forced to call Ms. Langbein as a witness at trial.  (D.E. 153 at 8.)

The Court is not persuaded that Defendants need to identify Ms. Langbein as the lawyer who gave them FLSA compliance advice, and the Court agrees with Judge Goodman that doing so could influence the jury.  Therefore, the Court adopts Judge

---

[3]        At the risk of stating the obvious, this ruling is subject to a final evidentiary decision by Judge Lenard, who will be presiding over the trial.

Goodman's resolution of this matter, subject to evidence presented at trial and any further

rulings made by the court, as follows:

> Defendants may not specifically identify Ms. Langbein and/or her law firm
> as the attorneys who provided FLSA compliance advice, and Ms. Langbein
> will be prohibited from mentioning it in any way, including during jury
> selection, opening statement, and closing argument. Defendants may,
> however, testify that they obtained legal advice and what it was (without
> identifying the specific attorney or law firm). If Plaintiff's counsel opens
> the door by asking questions which require a defense witness to disclose
> Ms. Langbein's identity as the advice-providing attorney or by otherwise
> mentioning that history, then Ms. Langbein and her clients are free to
> provide additional testimony.

(See D.E. 138 at 8-9.)

Accordingly, Plaintiff's motion in limine to exclude such evidence is **GRANTED**.

**b.      Defendants' Motion in Limine**

Defendants move in limine to exclude reference to, evidence of, or argument

regarding the following issues:

1. Prior or pending cases and/or claims brought against Defendants (or either of

   them) under the FLSA, for purposes of establishing willfulness or any other

   evidentiary purpose;

2. Settlement discussions, including a letter that tendered recently discovered unpaid

   wages to Plaintiff, as constituting an admission of liability;

3. An exhibit which Plaintiff purports to represent a piece of paper on which he

   clocked in and out on days he worked off the clock during an unknown pay

   period.;

4. "Me Too" testimony from current or former employees and from any prior or current plaintiffs who filed suit against either Defendant either through direct or impeachment testimony;

5. Alleged hiring or employment of illegal workers, or other bad acts or allegedly illegal conduct on the part of Defendants (or either of them); and

6. Defendants' wealth, net worth, assets, Hossain's home address or location of his home, and other businesses owned by Hossain.

(Defs.' Mot. in Limine at 1-2.)  Defendants also move to permit them to introduce certain evidence:

7. If the Court permits Plaintiff to elicit evidence or testimony about prior lawsuits and/or claims brought against Defendants under the FLSA, Defendants seek to introduce:

    a) the fact that those lawsuits/claims were brought by Mr. Zidell's Firm;

    b) Mr. Zidell's Firm is located within walking distance of Defendants' Market;

    c) an employee of Mr. Zidell's Firm is a regular customer of the Market;

    d) one of Mr. Zidell's business cards was given to an employee of the Market;

    e) after Plaintiff resigned from the market, he began to work with a former employee of the Market who previously hired Mr. Zidell's Firm and sued Defendants;

    f) Plaintiff learned of Mr. Zidell's Firm through former co-workers;

16

g) prior lawsuits were settled for the sake of peace with no admission of liability;

h) two plaintiffs represented by Mr. Zidell's Firm were terminated for theft; and

i) two more plaintiffs who sued Mr. Hossain and on whose behalf Mr. Zidell's Firm brought overtime claims voluntarily dismissed their claims, were prosecuted by the Miami-Dade State Attorney's Office for 3rd Degree Grand Theft, and must repay Mr. Hossain over $16,000 if they decide to re-file their overtime lawsuits; and

8. Mr. Hossain's long-term attorney-client relationship with Langbein & Langbein, P.A., Leslie W. Langbein, Esq.'s background and experience in the area of wage and hour law; an invoice rendered by Langbein & Langbein P.A. to Mr. Hossain from 2004 which proves when he first sought and received legal advice regarding FLSA compliance; Mr. Hossain's periodic request for advice from Ms. Langbein regarding employment matters; and representation by Langbein & Langbein, P.A. in litigation regarding the FLSA.

(D.E. 140 at 1-3.)

### 1.    Other FLSA cases and claims against Defendants

First, Defendants seek to exclude under Rule 404(b) evidence of prior or current FLSA lawsuits against the Market and/or Mr. Hossain and his other businesses.[4]   (Defs.'

---

[4]        Defendants state that they intend to introduce evidence of the first lawsuit filed against another business owned by Mr. Hossain, "but only as the catalyst for why he sought out

Mot. at 6.)  Defendants argue that even if the evidence is relevant, it is unduly prejudicial. (Id. at 6-7.)

In his Response, Plaintiff argues that evidence regarding Defendants' other lawsuits is relevant to the issue of good faith and willfulness, which Defendants asserted as affirmative defenses.  (D.E. 144 at 2.)  Plaintiff argues that the issue of willfulness is relevant to which statute of limitations applies, (id. at 3 (citing Davila v. Menendez, 717 F.3d 1179, 1181 (11th Cir. 2013)), and the issue of good faith is relevant to whether liquidated damages are available, (id. at 3-4 (citing Alvarez Perez v. Sanford-Orlando Kennel Club, Inc., 515 F.3d 1150 (11th Cir. 2008))).

Defendants argue in their Reply that for a prior lawsuit to be admissible under Rule 404(b), the evidence must be such that the jury could find that the prior act actually occurred and that Defendants are liable for it.  (D.E. 156 at 2.)  They argue that the first two lawsuits were filed against the Market before Mr. Hossain owned it, and are therefore irrelevant.  (Id. at 2-3.)  They further argue that the prior lawsuits which might otherwise be relevant settled without a determination or admission of liability.  (Id. at 3.)

Federal Rule of Evidence 404(b) generally prohibits the introduction of evidence of "a crime, wrong, or other act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  Fed. R. Evid. 404(b)(1).  However, "[t]his evidence may be admissible for another purpose, such as

---

legal advice in 2004 on the FLSA and how he came to establish a relationship with Langbein & Langbein, P.A."  (Id. at 7.)  However, the Court has already determined that Defendants are not permitted to introduce evidence regarding Defendants' relationship with Ms. Langbein or her law firm.  (See supra Section III(a)(6).)

proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

> To be admissible, 404(b) evidence must (1) be relevant to one of the enumerated issues and not to the defendant's character; (2) the prior act must be proved sufficiently to permit a jury determination that the defendant committed the act; and (3) the evidence's probative value cannot be substantially outweighed by its undue prejudice, and the evidence must satisfy Rule 403.

United States v. Chavez, 204 F.3d 1305, 1317 (11th Cir. 2000). Under Rule 403, the Court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

First, the Court finds that the two FLSA lawsuits against the Market prior to Mr. Hossain acquiring ownership and the lawsuits against Mr. Hossain's other business(es) are irrelevant and, therefore, inadmissible. Fed. R. Evid. 402.

However, the FLSA lawsuits against the Market since Mr. Hossain became its owner are relevant to the issue of willfulness. Contreras v. Aventura Limousine & Transp. Serv., Inc., CASE NO. 13-22425-CIV-DIMITROULEAS, 2014 WL 11880996, at *1 (S.D. Fla. July 29, 2014). As such, the evidence is not "clearly inadmissible on all potential grounds." Gonzalez, 718 F. Supp. 2d at 1345. If evidence is not clearly inadmissible, "evidentiary rulings should be deferred until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context." Id. (internal citation and quotation marks omitted). Therefore, Defendants' motion in limine

to exclude such evidence is **DENIED**.  At trial, the Court will: (1) consider a proffer by Plaintiff to determine whether a reasonable jury could find by a preponderance of the evidence that Defendants committed the offense alleged, see Chavez, 204 F.3d at 1317; and if so, (2) determine in context whether the probative value of such evidence is substantially outweighed by the danger of undue prejudice under Rule 403.

### 2. Settlement Discussions

Next, Defendants seek to exclude under Rule 408 a tender letter Defendants presented to Plaintiff to satisfy a miscalculation of pay that Defendants discovered during this litigation.  (Defs.' Mot. at 7.)  On January 30, 2018, Defendants withdrew this argument.  (D.E. 162.)  Accordingly, the Motion is **DENIED AS MOOT** as to the evidence regarding the tender letter.

### 3. A copy of handwritten notes regarding "off the clock" work

Next, Defendants seek to exclude under Rules 1004 and 901(a) a sheet of paper Plaintiff claims that he used to document his "off the clock" hours.  (Defs.' Mot. at 9.) Plaintiff testified during his deposition that he threw away the original sheet of paper he used to record his off the clock hours, but that he had a similar sheet of paper at home, which he refused to produce to Defendants in discovery.  (Id.)

In his Response, Plaintiff argues that because Defendants did not keep accurate records of the hours he worked, his recollection is the primary evidence that Defendants violated the FLSA.  (D.E. 144 at 9-10.)  He argues that the sheet of paper should not be excluded because Plaintiff did not anticipate bringing a lawsuit against Defendants at the time he maintained that sheet of paper.  (Id. at 10.)

In their Reply, Defendants argue that the sheet of paper is inadmissible, and that the fact that Plaintiff admitted to destroying the original and refuses to produce the duplicate (which Defendants submit is a discovery violation) "raise the inference that the document is not what it purports to be and is inadmissible under Rules 901(a) and 1004." (D.E. 156 at 8.)

Under the FLSA, "[i]t is the employer's duty to keep records of the employee's wages, hours, and other conditions and practices of employment." <u>Allen v. Bd. of Pub. Educ. for Bibb Cty.</u>, 495 F.3d 1306, 1314 (11th Cir. 2007) (citing <u>Anderson v. Mt. Clemens Pottery Co.</u>, 328 U.S. 680, 687 (1946)).  In <u>Anderson</u>, the Supreme Court stated that if an employer has failed to keep proper and accurate records and the employee cannot offer convincing substitutes,

> [t]he solution . . . is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work.  Such a result would place a premium on an employer's failure to keep proper records in conformity with his statutory duty; it would allow the employer to keep the benefits of an employee's labors without paying due compensation as contemplated by the Fair Labor Standards Act.

328 U.S. at 687, superseded by statute on other grounds as stated in <u>Sandifer v. U.S. Steel Corp.</u>, __ U.S. __, 134 S. Ct. 870, 875-76 (2014).  Instead, "an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." <u>Id.</u>

> The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence.

21

If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

Id. at 687-88.

In Reeves v. International Telephone & Telegraph Corp., the former Fifth Circuit held that an employee's inaccurate records are not always fatal to his claim. 616 F.2d 1342, 1351 (5th Cir. 1980),[5] overruled on other grounds by McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133-34 (1988), as recognized in Heidtman v. Cty. of El Paso, 171 F.3d 1038, 1042 n.4 (5th Cir. 1999)). Specifically, "[w]here the inaccuracy is due to the employer's failure to keep adequate records as required by statute, imprecise evidence on quantum can provide a 'sufficient basis' for damages." Id. (citing Anderson, 328 U.S. at 687.

Defendants argue, however, that they kept adequate records, and even if they didn't the Plaintiff's evidence must still be admissible under the Rules of Evidence; in that regard, Defendants argue that Plaintiff has not established the authenticity of his duplicate sheet of paper. (D.E. 156 at 7-8.)

"To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). Under Rule 1002, "[a]n original writing, recording, or photograph is required in order to prove its content unless [the Federal Rules of Evidence] or a federal statute provides otherwise." Under Rule 1004:

---

[5]     In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions handed down by the former Fifth Circuit before October 1, 1981.

An original is not required and other evidence of the content of a writing, recording, or photograph is admissible if:

> (**a**) all the originals are lost or destroyed, and not by the proponent acting in bad faith;
> (**b**) an original cannot be obtained by any available judicial process;
> (**c**) the party against whom the original would be offered had control of the original; was at that time put on notice, by pleadings or otherwise, that the original would be a subject of proof at the trial or hearing; and fails to produce it at the trial or hearing; or
> (**d**) the writing, recording, or photograph is not closely related to a controlling issue.

Under Rule 1003, "[a] duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate."

Defendants argue that the duplicate copy of the sheet of paper Plaintiff used to record his off the clock hours is inauthentic, and that purposefully destroying the original and refusing to produce the duplicate to Defendants in discovery is evidence of bad faith. (Defs.' Mot at 9-11.)

The Court cannot determine, based on the Parties' briefs, whether the sheet of paper referenced in Defendants' Motion is admissible under the Rules of Evidence. Accordingly, the Court **DEFERS RULING** on this issue until trial.

### 4.      "Me Too" evidence

Next, Defendants seek to exclude other former employees of the Market who were or are represented by Mr. Zidell's Firm from testifying at trial.  (Defs.' Mot. at 11-13.) They argue that two cases were brought before Mr. Hossain owned the Market; two cases were brought against a different store that Mr. Hossain owns at a different location; and

that the individuals who previously sued the Market contractually agreed that their lawsuits and the settlement of those lawsuits would not be admissible in any other proceeding to establish willfulness.  (<u>Id.</u> at 12.)

Plaintiff argues that although the settlement agreements state that the settlement agreements cannot be used as evidence to establish willfulness or lack of good faith in future lawsuits, "it is not a blanket preclusion to all testimony in future lawsuits."  (D.E. 144 at 13.)  That is, although the settlement agreements <u>themselves</u> cannot be introduced to establish willfulness or lack of good faith, the former employees who executed those settlement agreements may testify regarding Defendants' alleged improper payment methods.  (<u>Id.</u>)  The Settlement Agreement provides:

> The parties agree that this Agreement may be used as evidence only in a subsequent proceeding in which one of the parties alleges a breach of this Agreement and EMPLOYEES agree that their counsel may not use this Agreement as evidence to establish willfulness or lack of good faith in this or any future lawsuit against COMPANY and/or the Associated Parties.

(D.E. 140-1 ¶ 14.)  The Court agrees with Plaintiff that the settlement agreements do not preclude the prior plaintiffs from testifying at future lawsuits regarding Defendants' wage practices.  (<u>See</u> <u>id.</u>)

Generally, "me too" evidence is analyzed under Rule 404(b) as evidence of other bad acts. <u>See, e.g.</u>, <u>Goldsmith v. Bagby Elevator Co., Inc.</u>, 513 F.3d 1261, 1286 (11th Cir. 2008) ("The 'me too' evidence was admissible, under Rule 404(b), to prove the intent of Bagby Elevator to discriminate and retaliate."); <u>Demers v. Adams Homes of Nw. Fla., Inc.</u>, 321 F. App'x 847, 853-54 (11th Cir. 2009).

Here, the Court finds that "me too" evidence of prior FLSA lawsuits filed against the Market before Mr. Hossain owned it, and FLSA lawsuits filed against Mr. Hossain's other establishment, are irrelevant and should be excluded under Rule 402.

However, the Court has already found that FLSA lawsuits against the Market since Mr. Hossain became its owner are relevant to the issue of willfulness. <u>Contreras</u>, 2014 WL 11880996, at *1. Therefore, "me too" evidence is not "clearly inadmissible on all potential grounds." <u>Gonzalez</u>, 718 F. Supp. 2d at 1345. If evidence is not clearly inadmissible, "evidentiary rulings should be deferred until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context." <u>Id</u>. (internal citation and quotation marks omitted). Therefore, Defendants' motion in limine to exclude such evidence is **DENIED**.

### 5. Hiring of illegal aliens or other character evidence

Next, Defendants seek to exclude under Rule 403 evidence that Defendants employed illegal workers, mistreated employees, or committed other bad acts. (Defs.' Mot. at 13.) They argue that this is improper character evidence, and that it is irrelevant and prejudicial. (<u>Id</u>. at 13-14.)

Plaintiff argues that such evidence is relevant to good faith and willfulness. (D.E. 144 at 14.) Additionally, they argue that:

> Defendants are claiming that they complied with the FLSA based on the advice they received from counsel. They have articulated that based on the advice of counsel they did not hire undocumented workers and they never paid any employees in cash, especially not based on their status in the USA. Undoubtedly, these issues go directly towards compliance with the provisions of the FLSA and also can be used for impeachment purposes at

Trial, since Defendants own sworn testimony is to be directly at odds with
this evidence.

(Id. at 14-15.)

Defendants argue that its hiring practices are not at issue in this case, were not the
cause of Plaintiff's injury, and therefore should not be part of the evidence at trial. (D.E.
156 at 8-9.)  They argue that the only purpose of such evidence is to establish prior bad
acts under Rule 404, and even if it was somehow relevant, any relevance is substantially
outweighed by the danger of unfair prejudice.  (Id. at 9.)

Plaintiff has not persuaded the Court that evidence that Defendants hired illegal
workers is at all relevant to whether they willfully violated the FLSA, and he has cited no
case law in support of his argument.  Assuming arguendo that it is somehow relevant, the
Court finds that such relevance is substantially outweighed by the danger of unfair
prejudice.  See Romero v. Reiman Corp., Case No. 11-CV-216-F, 2012 WL 12861129, at
*2 (Mar. 21, 2012) (granting motion in limine to exclude evidence that the defendants
hired illegal aliens because it was irrelevant and unrelated to plaintiff's claims that the
defendant's negligence caused him injuries, and noting that "the only possible use for this
evidence is to create prejudice against Defendants").  Accordingly, Defendants' Motion
to exclude such evidence is **GRANTED**.

### 6.    Financial worth

Next, Defendants seek to exclude evidence regarding Defendants' wealth or
assets.  (Defs.' Mot. at 14.)  "Given that enterprise coverage is established, the only other
reason why Plaintiff would elicit testimony or attempt to introduce evidence of

HOSSAIN's wealth would be to appeal to the jurors' sympathy or highlight the financial disparities between HOSSAIN and Plaintiff." (Id.)

Plaintiff argues that evidence regarding Defendants' gross annual income may be introduced for the relevant years to show, for example, the volume of business to support the hours Plaintiff is claiming overtime. (D.E. 144 at 15.) He further argues that such information can be used to impeach Defendants at trial. (Id. at 15-16.) "Further," he argues,

> Defendants should not be entitled to present to the Jury that they are a small mom-and-pop business and that the Jury should empathize with Defendants for same. The FLSA has a specific monetary threshold requirement to be a covered enterprise and Plaintiff should be able to present to the Jury that Defendants had a viable company that was running with multiple employees and conducting business on a large scale.

(Id. at 16.)

Defendants argue that wealth, assets, or volume of business are only relevant to enterprise coverage, which Defendants have stipulated to. (D.E. 156 at 9.) They further argue that volume of sales is irrelevant to Plaintiff's need to work more hours:

> Plaintiff stocked shelves. If a shelf ran low of merchandise during the day, it was his job to re-fill it. If he usually re-filled the shelf once a day but had to do so 2 or 3 times more because of the volume of customers who purchased the product, the work was still done during his shift.

(Id.)

"The general rule is that, during trial, 'no reference should be made to the wealth or poverty of a party, nor should the financial status of one party be contrasted with the other's.'" Brough v. Imperial Sterling Ltd., 297 F.3d 1172, 1178 (11th Cir. 2002)

(citation omitted).  "The erroneous admission of such evidence can constitute reversible error."  Id. (citation omitted).

Because the Court has already granted Plaintiff summary judgment on the issue of enterprise liability, Plaintiff does not need to introduce evidence of gross volume of sales to establish enterprise liability.  Accordingly, Defendants' Motion to exclude evidence regarding Defendants' wealth or assets is **GRANTED**.

### 7.   Evidence regarding Mr. Zidell's involvement in prior cases against Defendants

Defendants argue that if Plaintiff is permitted to introduce evidence of prior or current FLSA lawsuits against Defendants, Defendants should be permitted to introduce evidence that Mr. Zidell's Firm was involved in those lawsuits.  (Defs.' Mot. at 16-17.)

The Court adopts the ruling it made in Section III(a)(3), supra, when it found that evidence regarding Mr. Zidell's Firm was not clearly inadmissible on all grounds, and therefore any ruling on the admissibility of such evidence should be deferred until trial. Accordingly, Defendants' Motion is **DENIED** with respect to this issue.

### 8.   Mention of Langbein & Langbein, P.A. and Leslie W. Langbein, Esq.

Defendants argue that the Court should permit Defendants to introduce evidence regarding Defendants' relationship with defense counsel and her law firm.  (Defs.' Mot. at 18.)  The Court adopts the ruling it made in Section III(a)(6), supra, when it adopted Judge Goodman's ruling on this issue and precluded Defendants from specifically identifying Ms. Langbein and/or her law firm.  Accordingly, Defendants' Motion is **DENIED** with respect to this issue.

IV.     **Conclusion**

Accordingly, it is **ORDERED AND ADJUDGED** that:

1.      Plaintiff's <u>Daubert</u> Motion and to Strike Expert Witness, Leslie Langbein, Esq., (D.E. 123), is **DENIED AS MOOT**;

2.      Plaintiff's Motion in Limine (D.E. 139) is **GRANTED IN PART AND DENIED IN PART** consistent with this Order; and

3.      Defendants' Omnibus Motion in Limine to Preclude Irrelevant or Prejudicial Testimony and Evidence and to Permit Certain Areas of Inquiry (D.E. 140) is **GRANTED IN PART, DENIED IN PART, AND DEFERRED IN PART** consistent with this Order.

        **DONE AND ORDERED** in Chambers at Miami, Florida this 8th day of March, 2018.

                                        _Joan A. Lenard_
                                        **JOAN A. LENARD**
                                        **UNITED STATES DISTRICT JUDGE**